IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| CRYSTAL W.,[1] | ) | |
| Plaintiff, | ) | Civil Action No. 5:21-cv-00027 |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| KILOLO KIJAKAZI, | ) | By:    Joel C. Hoppe |
| Acting Commissioner of Social Security, | ) | United States Magistrate Judge |
| Defendant.[2] | ) | |

Plaintiff Crystal W., proceeding pro se, asks this Court to review the Commissioner of Social Security's final decisions denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record, the parties' filings and oral arguments, and the applicable law, I cannot find that the decisions are supported by substantial evidence. Accordingly, I respectfully recommend that the Commissioner's decisions be reversed and Crystal's case be remanded under the fourth sentence of 42 U.S.C. § 405(g).

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Acting Commissioner Kijakazi is hereby substituted as the named defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98–100 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *accord* 20 C.F.R. §§ 404.1505(a), 416.905(a).[3] Social Security ALJs follow a

---

[3] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

Crystal applied for DIB and SSI in April 2018. Administrative Record ("R.") 234–46. She alleged disability as of August 15, 2017, R. 234, 240, because of depression, anxiety, and joint problems in her hips, right hand, and feet, R. 118, 269. Disability Determination Services ("DDS"), the state agency, denied her claims initially in September 2018, R. 89–100, and upon reconsideration in May 2019, R. 105–28. In February 2020, Crystal appeared with a non-attorney representative and testified at an administrative hearing before ALJ Brian Rippel. R. 43–78. A vocational expert ("VE") also testified at this hearing. R. 65–77.

ALJ Rippel issued an unfavorable decision on February 13, 2020. *See* R. 22–35. He found that Crystal had not engaged in substantial gainful activity since August 15, 2017, her alleged onset date. R. 24. Crystal had "severe" impairments of neuropathy of the bilateral lower extremities, atypical chest pain, chronic obstructive pulmonary disease ("COPD"), anxiety, and depression. R. 25. Crystal's remaining impairments were "non-severe." *Id.* None of Crystal's

"severe" impairments met or equaled a relevant Listing. R. 25–27 (citing 20 C.F.R. pt. 404,

subpt. P, app. 1 §§ 3.02, 4.04, 11.14, 12.04, 12.06).

ALJ Rippel then evaluated Crystal's residual functional capacity ("RFC") and found that

she could lift and carry consistent with "medium"[4] work, but she had "no limitations as to

standing, walking, or sitting in an 8-hour workday." R. 28. She was limited to "only occasional

exposure to respiratory irritants . . . or workplace hazards"; "simple, routine tasks[] in entry-level

unskilled work with short and simple instructions [and] routine, customary breaks after about 2-

hour periods of work"; "no fast-paced production rate"; "low-stress work (defined as only

occasional independent decision making and/or changes in the work setting); and . . . only

occasional interaction with the public, co-workers, and/or supervisors; [and] as to co-workers,

only occasional tandem tasks." *Id.*    Based on this RFC finding and the VE's testimony, ALJ

Rippel found that Crystal could perform her past relevant work as a general production worker,

furniture assembler, and machine operator, R. 32–33 (citing R. 66–68), and that Crystal could

perform the requirements of other "medium, unskilled" jobs existing in significant numbers in

the national economy, such as brewery worker, order selector, and brazer, R. 33–34 (citing R.

68–69). Thus, ALJ Rippel concluded that Crystal was not disabled from August 15, 2017,

through the date of his decision. *Id.* The Appeals Council declined review, R. 1–4, and this

appeal followed.

## III. Discussion

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of
objects weighing up to 25 pounds, 20 C.F.R. §§ 404.1567(c), 416.967(c), and "standing or walking, off
and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of
frequent[ly] lifting or carrying objects weighing up to 25 pounds. . . . [S]itting may occur intermittently
during the remaining" two hours, SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). *See Woods v.
Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

Crystal broadly challenges the Commissioner's decision that she was not disabled from August 15, 2017, through February 13, 2020. *See generally* Pl.'s Br., ECF No. 16. She asserts that the limitations caused by her neuropathy, lower extremity pain, anxiety, depression, COPD, and atypical chest pain render her disabled. *Id.* at 1.

Liberally construing her filings, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), Crystal argues that ALJ Rippel's decision is not supported by substantial evidence and that ALJ Rippel should have included greater functional limitations in the RFC finding. The question of whether Crystal was, in fact, disabled prior to February 13, 2020, is for the Commissioner to decide. The fundamental question before the Court today is whether ALJ Rippel's conclusion that Crystal was "*not disabled* is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (emphasis added). ALJ Rippel's decision does not meet these minimum standards. Namely, ALJ Rippel failed to build an "accurate and logical bridge," *Woods*, 888 F.3d at 694, from the evidence to his conclusion that the medical opinion of Tara Prieur, M.D., was "persuasive." R. 32. Because ALJ Rippel's analysis of Dr. Prieur's opinion precludes meaningful review, I am unable to determine whether his RFC finding is supported by substantial evidence. Accordingly, reversal and remand are warranted.

A.    *Summary*

1.    *Relevant Medical Evidence*

In May 2019, Crystal presented to Staunton Medical Associates, R. 411, where Susan Becker, N.P., diagnosed COPD, wheezing, and neuropathy, R. 413. *See also* R. 408–410. That July, Crystal told podiatrist John Ocheltree, D.P.M., that she had stinging, burning, and numbness in her feet, which she said was sometimes accompanied by pain and a heavy feeling.

*See* R. 420–21. Crystal's dorsalis pedis and posterior tibial pulses were weak but palpable, and she "appear[ed] to have some form of neuropathy, especially prevalent at night when she tries to get to sleep." R. 420. Dr. Ocheltree opined that Crystal would "best benefit from routine palliative care," provided Crystal a tube of Stop Pain for her neuropathy, and encouraged Crystal to quit smoking "because of the [adverse impact] of nicotine on her lower extremity circulation." *Id.*

When Crystal returned to Staunton Medical Associates in September, it was noted that she had recently been evaluated for burning, stinging, and numbness in her feet that radiated up to her knees. R. 406. The cream that Dr. Ocheltree had given her was "not helping." *Id.* Examination revealed normal ambulation, "limited" range of motion, pain in both lower legs, and neuropathy, and NP Becker assessed wheezing and COPD, prescribed an inhaler, and encouraged Crystal to quit smoking. R. 407. At Crystal's October visit with NP Becker, exam findings were unchanged, and NP Becker added neuropathy to her assessment and prescribed gabapentin. R. 402–04. When Crystal saw NP Becker in November, exam findings were the same, and NP Becker continued Crystal on gabapentin. R. 398–400.

### 2. Dr. Prieur's Opinion

In May 2019, Crystal saw Dr. Prieur for a consultative physical exam. *See* R. 380–87.. Examination revealed diffuse wheezing, unspecified "sensory deficit to light touch involving the right pinkie and fourth digit," numbness in both feet, and normal gait. R. 381–82. She had normal strength and range of motion throughout. R. 383, 385–86. Crystal did not use an assistive device, *id.*, but she could not rise on her heels or toes or perform a partial squat, R. 383. Based on this day's exam findings, Dr. Prieur opined that Crystal could stand, walk, sit, lift/carry up to 50 pounds, and grasp without restriction, and that she could "frequently" stoop, crouch, crawl,

kneel, reach and handle. R. 384. Dr. Prieur also opined that Crystal was "[f]ull duty capable." R.

386 ("There are no physical limitations noted by exam."); *see* R. 384 (opining that Crystal could

sit, stand, and/or walk "for at least 8 hours [each] per workday with usual breaks").

      3.     *Crystal's Statements*

Crystal submitted a Function Report to DDS in January 2019. *See* R. 293–300. She said

her impairments made her unable to stand for long periods of time, R. 294, but she would walk

to the Goodwill store across the street from her house to shop for movies and books for fifteen

minutes to an hour about once every month, R. 296. Crystal also described experiencing pain

radiating from her feet to her knees accompanied by feelings of numbness, stinging, burning, and

tightness. R. 300. At the administrative hearing in February 2020, Crystal testified that her

daughter, with whom she lived, performed most of the household tasks because standing caused

pain in her feet. R. 58. Crystal also said she experienced neuropathy mostly in her feet but that it

would go up to her knees, and she said "sometimes it fe[lt] like there's something just crawling

around in my feet and legs down there." R. 59. She also described involuntary movement in her

toes that would wake her up at night, *id.*, and again said she had difficulty standing and sitting

because of her foot pain, R. 58–59. Crystal said that she could sit for about "5/10 minutes, 15

minutes" before needing to move around or stand up, she could stand for "[p]robably just a

couple minutes if even that," and she could not "walk anywhere without pain" because of her

feet. R. 63 ("I mean it's constant pain so I can't say I can walk two feet without pain because it's

always there.").

B.    *The ALJ's Decision*

ALJ Rippel found that Crystal maintained the RFC to perform "medium" work, including

lifting and/or carrying up to 50 pounds occasionally and twenty-five pounds frequently, and "no

limitations as to standing, walking, or sitting in an eight-hour workday." R. 28; *see also* R. 34. In making this RFC finding, ALJ Rippel evaluated the medical opinion evidence of record. *See* R. 31–32. He found that Dr. Prieur's opinion was "persuasive" because it was "consistent with and supported by the medical evidence of record, specifically findings during examinations, when the claimant ambulated normally, had some wheezing in her lungs, with regular heart rate and rhythm, with limited range of motion, and pain in her bilateral lower extremities." *Id.*; *see also* R. 34 (citing R. 384–86).

C.     *Analysis*

Crystal challenges ALJ Rippel's RFC assessment. A claimant's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite her medical impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). The Commissioner "has specified the manner in which an ALJ should assess a claimant's RFC." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). First, because RFC is by definition "a function-by-function assessment based upon all of the relevant evidence of [the claimant's] ability to do work related activities," SSR 96-8p, 1996 WL 374184, at *3, the ALJ must identify each impairment-related functional restriction that is supported by the record, *see Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). Second, the ALJ's decision must provide a "narrative discussion describing" how specific medical facts and non-medical evidence "support[ ] each conclusion" in the RFC assessment, SSR 96-8p, 1996 WL 374184, at *7, logically explaining how he weighed any conflicting or inconsistent evidence in arriving at those conclusions, *Thomas*, 916 F.3d at 311. Thus, a proper RFC analysis has three components: (1) all relevant evidence considered under the correct legal standard, (2) an accurate and logical explanation of how the evidence supports the ALJ's

8

findings, and (3) conclusion. *See Thomas*, 916 F.3d at 311; *Woods*, 888 F.3d at 694; *Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017). "The second component, the ALJ's logical explanation, is just as important as the other two. Indeed, [binding] precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas*, 916 F.3d at 311 (citing *Woods*, 888 F.3d at 694). A reviewing court that "cannot gauge the propriety of the ALJ's RFC assessment" typically "cannot say that substantial evidence supports the ALJ's denial of benefits." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663–64 (4th Cir. 2017).

In assessing a claimant's RFC, the ALJ will evaluate the medical opinion evidence of record. 20 C.F.R. §§ 404.1520c, 416.920c. For claims filed after March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must adequately explain whether and to what extent every medical opinion in the record is "persuasive." *See id.* §§ 404.1520c(b), 416.920c(b). The regulations instruct that supportability and consistency are "the most important factors" and that the ALJ therefore "will explain how [he or she] considered" those two factors in evaluating the persuasiveness of an opinion or a finding. *See id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency," on the other hand, means that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the [record], the more persuasive the medical opinion(s) . . .

will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered" other relevant factors, including the medical source's specialization and relationship with the claimant. *Id.* §§ 404.1520c(c)(3)–(5), 416.920c(c)(3)–(5).

ALJ Rippel's decision does not comply with this regulation. Although the ALJ discussed the consistency and supportability of Dr. Prieur's opinion, he failed to offer an adequate explanation for his findings with respect to the consistency of that opinion. ALJ Rippel found that Dr. Prieur's opinion was "consistent with . . . the medical evidence of record, specifically findings during examinations, when the claimant ambulated normally, had some wheezing in her lungs, with regular heart rate and rhythm, with limited range of motion, and pain in her bilateral lower extremities." R. 32. The ALJ adopted Dr. Prieur's opinion that Crystal could stand and walk for eight hours each in an eight-hour workday, R. 28, 34, which exceeds the demands of medium work, *see* 20 C.F.R. §§ 404.1567(c), 416.967(c). Yet, much of the evidence cited by ALJ Rippel—wheezing in Crystal's lungs, limited range of motion, and pain and numbness in her bilateral lower extremities—is *inconsistent* with Dr. Prieur's opinion that Crystal had no restrictions on her abilities to walk, stand, or carry significant amounts of weight throughout an eight-hour workday. *See* R. 400, 404, 407. Despite this apparent conflict, however, the ALJ provides no explanation of why Crystal's severe physical impairments, including "neuropathy of the bilateral lower extremities," R. 25, caused no limitations. The ALJ did not reconcile his finding that Crystal had no restriction on her abilities to stand and walk with these seemingly conflicting exam findings. He also failed to explain why, despite finding Dr. Prieur's assessment "persuasive," he did not adopt her opinion that Crystal should be limited to "frequently stooping, crouching, crawling, kneeling, reaching, and handling," R. 32 (citing R. 384). *See* R. 28, 107. Absent such an explanation, I am unable to undertake meaningful review of the ALJ's decision.

*Testamark v. Berryhill*, 736 F. App'x 395, 399 (4th Cir. 2018) ("Absent more thorough and well-reasoned explanation, we cannot conduct meaningful judicial review of the ALJ's conclusions."); *see also Warren v. Astrue*, No. 2:08cv3, 2008 WL 3285756, at *11–12 (W.D. Va. Aug. 8, 2008) (noting that the "court cannot determine if the Commissioner's findings are supported by substantial evidence" where, as here, the ALJ "fails to adequately explain his rationale for rejecting the opinions of those whom he otherwise gave great weight to in arriving at his decision"). Thus, remand is warranted such that the ALJ can adequately explain his reasoning.[5]

Lastly, Crystal submitted additional evidence to the Appeals Council. *See* R. 2, 14–18, 80–83. The evidence consists of two Treating Source Statements, one psychological and one physical, by NP Becker, which depict greater limitations than those included in ALJ Rippel's RFC assessment. On remand, the ALJ should consider this evidence and any impact it may have on Crystal's RFC. *See* 20 C.F.R. §§ 404.983, 416.1483.

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge **DENY** the Commissioner's Motions for Summary Judgment, ECF No. 17, **REVERSE** the Commissioner's final decision, **REMAND** the case for further administrative proceedings under the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this case from the Court's active docket.

## Notice to Parties

---

[5] In his RFC finding, ALJ Rippel limited Crystal to "no fast paced production rate" work, but he did not define that term. *See* R. 28. Because remand is warranted based on the ALJ's analysis of Dr. Prieur's opinion, the Court need not address whether this error was harmless in light of the VE's testimony. *See* R. 68. Nonetheless, if such a finding is included in Crystal's RFC on remand, the ALJ should define the term "fast paced production rate" work. *See Sarah N.W. v. Saul*, No. 5:19cv81, 2021 WL 668774, at *5 (W.D. Va. Feb. 19, 2021) (citing *Thomas*, 916 F.3d at 312).

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: July 26, 2022

Joel C. Hoppe
United States Magistrate Judge

12